LAW OFFICES OF
ROBERT L. KRASELNIK, PLLC
Robert L. Kraselnik (RK 0684)
40-08 Case Street, 2nd Floor
Elmhurst, NY 11373
Tel: 646-342-2019
Fax: 646-661-1317
*Attorney for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHRISTINE HUBER, on behalf of herself
and others similarly situated,

        Plaintiff,

    v.

SHINOLA/DETROIT, LLC and
BEDROCK MANUFACTURING COMPANY, LLC,

        Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

---

Plaintiff, Christine Huber ("Plaintiff"), on behalf of herself and all those similarly situated in New York State, hereby files this Class Action Complaint against Defendants Shinola/Detroit, LLC ("Shinola") and Bedrock Manufacturing Company, LLC ("Bedrock") (collectively, "Defendants"), and based upon her personal knowledge as to her own actions and the independent investigation of counsel, states as follows:

## INTRODUCTION

1. Products made in Detroit are enticing to Americans because they hearken back to the days when Detroit was the booming center of the industrial world and a powerful symbol of American economic dominance.

1

2. In a widely-reported story confirmed by Shinola's President, the Defendants, while formulating their new business concept, commissioned a study in which people were asked if they preferred a $5 pen made in China, a $10 pen made in America, or a $15 pen made in Detroit. When results showed that most people were willing to pay the much higher price for a Detroit-made product, Shinola was born and a marketing juggernaut was launched. *See* Exhibit A, Excerpts from Articles re: Shinola's Pre-Launch Study of Impact of "Made in Detroit" Branding (http://www.crainsdetroit.com/article/20120527/FREE/305279963/fossil-founder-digs-the-d); (http://www.chicagotribune.com/business/ct-shinola-storytelling-0308-biz-20150306-story.html); (http://www.freep.com/story/money/business/michigan/2015/12/16/shinola-stands-by-built-detroit-edits-swiss-claim/77092374/)

3. Defendants conceived the massively successful Shinola business-model based on the very true premise that consumers are willing to pay much higher prices for products actually made in Detroit.

4. To claim something as being made in America is a powerful statement. It invokes patriotism, craftsmanship, quality and American economic strength. The Made in America claim has been proven to consistently influence consumers' purchasing decisions. And as Defendants found in their study, a Made in Detroit claim can have even more impact.

5. The Federal Trade Commission closely guards how and when manufacturers can claim that a product is made in America. The central requirement is that "all or virtually all" of the parts must be made in the United States. "'All or virtually all' means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no – or negligible – foreign content." *See* Exhibit B, Federal Trade Commission, *Complying with the Made in The USA Standard* (December 1998),

http://www.business.ftc.gov/documents/bus03-complying-made-usa-standard (last accessed Dec. 22, 2015). A "Made in the USA" claim can be express or implied. In identifying implied claims, the FTC focuses on the overall impression of the advertising, label, or promotional material.

6. Made in America language can be qualified – but the qualification language must not be misleading and must be clear and prominent in size and font.

7. From Shinola's launch, Defendants have both expressly and impliedly sold a mirage – namely, that Shinola watches are "Made in Detroit," and that by buying these watches consumers are doing their part to rekindle Detroit's glorious manufacturing past.

8. Despite recent attempts to comply with FTC requirements, the reality is that Defendants have known from the beginning that they could not make watches in Detroit or in America at scale, and that EVERY component of the watch, except for the wrist straps, is made in Asia and Europe, with some assembly – such as the addition of the wrist straps and assembly of the movement parts – actually occurring in Detroit. None of the movement parts are made in America, let alone Detroit, nor is any other part of the watch except for the straps.

9. Since Shinola's launch, the company's advertisements and slogans unqualifiedly have claimed that the watches are made in Detroit and made in America.

10. The watches themselves prominently feature the word "Detroit" on their face and "Built in Detroit" on their back, while the words "U.S.A. Movement with Swiss Parts" appear on the back of the watch in miniscule font. *See* Exhibit C. The quartz movement components -- the actual timekeeping elements in a watch -- are made by Swiss company (and Bedrock shareholder) Ronda AG in Switzerland and Thailand.

11. From Shinola's inception, Defendants, through cunning, meticulously-planned and highly-deceptive marketing, have given consumers the overall impression that their watches are made in Detroit.

12. Shinola's marketing has worked. The company has sold over 500,000 watches since it began selling watches in 2013. Independent market research and analysis has concluded that Shinola quickly gained its following because its watches are purported to be made in Detroit. *See, e.g.,* Exhibit D, American Marketing Association News Publication re: Shinola. https://www.ama.org/publications/MarketingNews/Pages/motown-made.aspx

13. Internal emails and documents will prove Defendants have known all along the story they are selling is fiction. Moreover, this information will demonstrate that Defendants are now racing to remedy matters in response to mounting pressure from the media, the FTC and even their own employees.

14. Defendants' remedial measures, however, do not remedy much of anything. Nor do those measures change the fact that Defendants have exploited and continue to exploit -- for enormous profit -- consumers' well-intentioned yearning to buy American-made and Detroit-made products.

15. Plaintiff, on behalf of herself and other consumers that purchased Shinola watches in New York State, seeks redress for the misrepresentations and deceptions appearing in Defendants' marketing and on Defendants' watches.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 1453, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

17. Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District. Plaintiff purchased and used Defendant's watch in New York County.

## PARTIES

18. Plaintiff, Christine Huber, resides in New York County, New Jersey. In or about June of 2016, she purchased a Shinola "The Runwell" 36mm watch for $600 from Shinola's flagship store located in Tribeca in Manhattan at 177 Franklin Street. Plaintiff purchased the watch in reliance on the "Made in Detroit" and "Made in America" representations contained in Defendants' widespread marketing campaign. Plaintiff has since learned that a substantial number of the component parts of her watch were made overseas. She would not have purchased a Shinola watch and would not have paid a premium had she known that Defendants' "Made in Detroit" and "Made in America" claims regarding the origins of the watch were false. Based on Defendants' misrepresentations and deceptive conduct, Plaintiff purchased a watch that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately caused by Defendants' misconduct.

19. Shinola/Detroit, LLC is a foreign limited liability company based in Texas and listing an address for service of process in New York as: CT Corporation System, 111 Eighth Avenue, 13th Floor, New York, NY 10011.

20. Shinola, founded in 2011, is a luxury lifestyle brand which specializes in watches, bicycles, and leather goods, among other items. In addition to the Shinola website, Shinola products are available for sale at flagship stores in Detroit, New York, London, Highland Park, Plano, Minneapolis, Chicago, Los Angeles and Washington, DC, as well as upscale retailers across America and around the world.

21. Bedrock Manufacturing Company, LLC is a foreign limited liability company based in Texas and listing an address for service of process in New York listed as CT Corporation System, CT Corporation System, 111 Eighth Avenue, NY 10011.

22. Bedrock, Shinola's parent company, is a private equity and venture capital firm founded by Texas-based entrepreneur Tom Kartsosis, who also co-founded the multi-billion dollar Fossil Group watch and retail conglomerate.

23. Together, the Defendants are jointly engaged in the manufacturing, distributing, advertising, marketing, and selling of Shinola watches to hundreds of thousands of consumers nationwide, including New York.

### FACTUAL ALLEGATIONS

24. Defendants expressly advertise Shinola watches as being made in Detroit, built in Detroit, made in America and built in America. For example:



*See,* also Exhibit E, Further Examples of Shinola's Unqualified Origin Advertising.

25. Every Shinola watch is prominently stamped with the word "Detroit" on its face and engraved with the words "Built in Detroit" on its back. An FTC spokeswoman recently said that "Shinola's 'Built in Detroit' tagline on the back of its watches could be tantamount to a 'Made in

USA' claim." *See* Exhibit F, Detroit Free Press Article referring to FTC Spokeswoman's Comments about Shinola's Made in USA Claim.

26. More recently, in June of 2016, the FTC instructed Shinola to stop using the phrase "Where American is Made" and in addition, determined that the phrase "Built in Detroit" must, moving forward, be qualified with the phrase "with Swiss and imported parts." But the damage has been done, the impression has been left and millions of dollars of Shinola watches have been sold – based on a fundamental deception.

27. Defendants' overall marketing campaign misleads the consuming public into believing Shinola watches are made within the United States, and specifically in Detroit. Shinola's website, YouTube videos, Facebook , Instagram and Twitter pages slickly and heavily promote "Made in Detroit," "American luxury," "American quality" and the "glory of Detroit manufacturing." *See, e.g.,* Exhibit G, Screenshot from Shinola's Current Website: Our Story. The public posts on Shinola's Facebook and Twitter pages constitute a steady stream of congratulations to the company for making its watches in Detroit. For example, on Facebook: "Nice design and great story. Great idea to make watches in Detroit...." On another Facebook post, Defendants post a link that says: "View our American-made watches." In response, an individual writes: "This is a company that gets it." *See* Exhibit H, Facebook Post. And on an Twitter post, Shinola not only fails to correct the individual who congratulates them for being "Made in Detroit," but instead actually thanks them for the "kind words." *See* Exhibit I, Twitter Post.

28. Until very recently, Shinola's slogan was "Where American is Made." *See* Exhibit J.

29. However, ALL of the components of the watch, except for the wrist strap, are made outside of the United States. Specifically, the case, hands, crystals, bracelets and buckles are

made in China. The movement components are made in Switzerland and Thailand. The dials are made in China and Taiwan. Even the nylon strap material is made in Japan. Only the leather and rubber straps are made in America, and even those are not entirely made in Detroit. Instead, the leather for the straps is made in Largo, Florida; Hartland, Maine; and Chicago, Illinois. Nylon straps are cut and sewn in Detroit but the material comes from Japan. The FTC recently determined that ". . . *100%* of the cost of materials used to make certain [Shinola] watches is attributable to imported materials." *See* Exhibit K, June 16, 2016 FTC Letter to Bedrock Manufacturing Company (emphasis added).

30. Shinola merely assembles parts that are made overseas (except for some of the straps) in Detroit and adds a few other finishing touches in Detroit as well, such as dial printing. However, only a "small portion" of the dial printing is actually done in America.

31. Consumers are particularly vulnerable to these deceptive and fraudulent practices. Most consumers possess very limited knowledge of the likelihood that products, including the component parts therein, claimed to be made in the United States are in fact made in foreign countries. This is a material factor in many individual's purchasing decisions, as they believe they are supporting American companies and American manufacturing jobs.

32. Additionally, U.S. made component parts are subject to strict regulatory requirements, such as environmental, labor, and safety standards. Foreign made component parts are not subject to the same U.S. manufacturing standards and are often inherently of lower quality than their U.S. made counterparts. Foreign made components are also routinely less reliable and durable than their U.S. made counterparts. As such, Shinola watches are of inferior quality due to Defendants' decision to include foreign made component parts within.

33. Consumers generally believe that 'Made in the USA' products are higher quality than their foreign-manufactured counterparts. Due to Defendants' scheme to defraud the market, members of the general public, including Plaintiff and the Class, were fraudulently induced to purchase Defendants' products at inflated prices.

34. Shinola watches typically retail for $475 to $1,125. Comparable watches with similar specifications to Shinola's sell for substantially lower prices. *See,* Exhibit L, a Swiss-made Torgoen Orion containing Swiss quartz Ronda Movement which sells for $197. For example, a Fossil watch made with similar inexpensive quartz movement and parts sells for $125. *See,* Exhibit M. Fossil was co-founded in 1984 by Shinola founder Tom Kartsosis.

35. Besides watches, Shinola makes bicycles, pet supplies and leather writing journals. Defendants' high-level management is well-aware that the only Shinola products "actually American made" are the writing journals.

36. As more articles are being written in major publications about the true origins of Shinola products, the Defendants are trying to control the damage. They are instructing their salespeople to now say, when asked: "Shinola is, and has always been, a job creation vehicle. We have never claimed to manufacture everything in the U.S. For watches to be considered 'Made in the USA' virtually all parts would have to be manufactured in the US and unfortunately the supply chain does not exist at scale in the U.S.A. today." This statement is an admission by Shinola that they cannot currently make watches in the United States at scale, and yet their entire brand was founded on -- and continues to thrive upon -- the premise that they do.

37. Additionally, they are now scrambling to change their marketing premise by altering the Frequently Asked Questions section of their website. Defendants have recently added a chart to their Frequently Asked Questions page of their website in an attempt to make it appear as if

they have been revealing component sourcing all along, when in fact they have not. This new chart -- which shows that that all of the watch parts, except for some of the wrist straps, are made overseas -- is placed in response to the question: "Are all Shinola products made in America?" Internally, Defendants knew that their prior FAQ was not in compliance with FTC standards.

38. Defendants engaged in and continue to engage in a widespread, uniform marketing campaign using its product, ads, website, social media sites such as Facebook, Instagram and YouTube, and marketing events to mislead consumers about the origin of Shinola watches. By careful design, the overall effect of the Shinola brand is that the product is made in Detroit and therefore America, when, by FTC definition, it is not even close. This is deceptive.

39. The FTC requires that a product advertised as Made in the USA be "all or virtually all" made in the United States. Here, the opposite is true -- virtually all of the watch is made overseas.

40. Shinola's opportunistic marketing leaves the overwhelming impression that its watches are made in Detroit. And this is exactly the impression Defendants intended to leave all along. As Bedrock's chief executive, Heath Carr, explained in February of 2014, the goal was to tap into the same vein that was driving a growing minority of consumers to buy food at farmers' markets and eat only at restaurants serving locally grown produce. He stated: "We're reaching out to the consumer who cares about where things are made." *See* Exhibit N, Excerpt from *Economist* Article. (http://www.economist.com/blogs/schumpeter/2014/02/making-it-america) New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 is designed to protect consumers from this type of false representation and predatory conduct.

41. Plaintiff brings this proposed consumer class action on behalf of herself and all other persons in the State of New York, who, from the applicable limitations period up to and

including the present (the "Class Period"), purchased for use and not for resale any Shinola watch.

## CLASS ACTION ALLEGATIONS

42. Plaintiff seeks relief in her individual capacity and as representative of all others who are similarly situated. Pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the "Class"):

> All persons or entities in New York who made retail purchases of Shinola watches during the applicable limitations period that contained foreign-made component parts, and/or such subclasses as the Court may deem appropriate.

43. Excluded from the Class are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

44. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

45. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

46. Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

    a.  whether Defendants made deceptive Made in USA claims;

    b.  whether Defendants made deceptive Made in Detroit claims;

    c.  whether the Made in America and Made in Detroit marketing of Shinola watches violates federal, state and/or common law;

    d.  whether Defendants engaged in marketing practices intended to deceive the public by leading consumers to believe that the watches were made in Detroit and therefore in America;

    e.  whether members of the public were likely to be deceived by Defendants' marketing;

    f.  whether Defendants received a benefit from Plaintiff and Class Members;

    g.  whether it would be unjust for Defendants to retain such a benefit;

    h.  whether Defendants injured Plaintiff and the Class and the appropriate measure of those damages;

    i.  whether punitive damages are appropriate; and

    j.  whether injunctive relief is appropriate and what specific injunctive relief should be ordered.

47. Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased Defendants' watch during the Class Period and sustained similar injuries arising out of Defendants' conduct in violation of New York State and federal law.

Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

48. The Class is ascertainable because: 1) Defendants began selling Shinola watches in 2013 so every Shinola watch that has been purchased was purchased relatively recently and during the limitations period; and 2) it will be simple to determine reliably whether people actually purchased a Shinola watch because the vast majority of purchasers will still have the physical watch even if they do not have a receipt.

49. Calculating damages arising from the Defendants' challenged conduct is also straightforward as most purchasers are likely to have purchased either one or just a few watches. This renders a class-wide damage calculation feasible and manageable.

50. The facts and figures of this case lend themselves to the identification of a discrete class and the prosecution of a practical class action.

51. Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Class. Plaintiff and

Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

53. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

54. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

55. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

56. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

57. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

58. Plaintiff brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

59. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

60. Any person who has been injured by reason of any violation of the NY GBL may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

61. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed their watches as being made in Detroit and America are unfair, deceptive, and misleading and are in violation of the FTC regulations and the NY GBL § 349.

62. Defendants' should be enjoined from marketing Shinola watches as being made in Detroit and/or America without further specification as described in the FTC regulations and pursuant to NY GBL § 349.

63. Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

64. Defendants' actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing Shinola watches as a result of and pursuant to Defendants' generalized course of deception.

65. Plaintiff, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

66. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

67. Plaintiff brings this claim individually and on behalf of the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

68. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed their watches as made in Detroit and/or America deceptive are misleading and are in violation of FTC regulations and Gen. Bus. Law § 349.

69. The foregoing deceptive acts and practices were directed at consumers.

70. As a result of the repeated violations described herein, Defendants received and continue to receive unearned commercial benefits at the expense of their competitors and the public.

71. Plaintiff and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair trade acts and practices, Plaintiff and the other Class members suffered monetary losses associated with the purchase of Shinola watches, *i.e.*, the purchase price of the product and/or the premium paid by Plaintiff and the Class for said products.

## COUNT III

### NEGLIGENT MISREPRESENTATION

72. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

73. Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

74. In making the representations of fact to Plaintiff and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

75. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

76. Plaintiff and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing Shinola watches, which reliance was justified and reasonably foreseeable.

77. As a result of Defendants' wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Shinola watches, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

## BREACH OF EXPRESS WARRANTIES

78. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

79. Defendants breached these warranties by making improper claims as to the origin of their watches.

80. This breach resulted in damages to Plaintiff and the other members of the Class who bought Defendants' products but did not receive the goods as warranted in that the products were not as economically beneficial to Detroit and to America as they were led to believe.

81. As a proximate result of Defendants' breach of warranties, Plaintiff and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendants promised in its promotion, marketing, advertising and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value

or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

**COUNT V**

**UNJUST ENRICHMENT**
**(Pleaded in the Alternative)**

82. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

83. Plaintiff asserts this claim in the alternative in the event that the Court concludes that Plaintiff lacks an adequate remedy at law.

84. Plaintiff brings this claim individually, as well as on behalf of members of the Class.

85. At all times relevant hereto, Defendant deceptively labeled, marketed, and advertised Shinola watches as being made in Detroit and/or America without further specification as described in the FTC regulations.

86. Defendants' received certain monies as a result of its uniform deceptive marketing of its watches that are excessive and unreasonable.

87. Plaintiff and the Class conferred a benefit on Defendants through purchasing their purportedly Detroit-made watches and Defendants have knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

88. Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

20

## COUNT VI

## Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

89. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

90. Plaintiff and the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

91. Each Defendant is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) and (5).

92. Defendants' watches are "consumer products" as defined by 15 U.S.C. § 2301(1).

93. Defendants' origin claims constitute "express warranties."

94. Defendants, through their labels and marketing, create express warranties by making the affirmation of fact and promising that its watches comply with country of origin regulations.

95. Despite Defendants' express warranties regarding its watches, they do not comply with the Federal Trade Commission's Made in USA Standard.

96. Defendants breached their express warranties regarding its watches in violation of 15 U.S.C. § 2301, *et seq.*

97. Defendants sold Plaintiff and the Class watches that were not capable of being sold or legally held, and which were legally worthless. Plaintiff and the Class paid a premium price for the watches.

98. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.      For an order certifying the statewide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and and Plaintiff's attorneys as Class Counsel to represent members of the Class;

B.      For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff and the statewide Class;

D.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper;

H.      For an order directing Defendants to contribute a monetary sum to be determined by the Court to an organization determined by the parties and the Court whose purpose is to bring manufacturing back to Detroit; and

I.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit;

J.      Any other relief the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated: August 15, 2016

Respectfully submitted,

LAW OFFICES OF ROBERT L. KRASELNIK, PLLC
Robert L. Kraselnik (RK 0684)
40-08 Case Street, 2nd Floor
Elmhurst, NY 11373
Tel: 646-342-2019
Fax: 646-661-1317
Attorney for Plaintiff and the Class